# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**MANUEL EDWARD MARTINEZ,**

    **Plaintiff,**

    vs.                                                                                                                   Civ. No. 16-1137 KK

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 13) filed March 15, 2017, in support of Plaintiff Manuel Edward Martinez's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits and Title XVI supplemental security income benefits. On April 28, 2017, Plaintiff filed his Motion to Reverse and Remand Administrative Agency Decision and Memorandum Brief in Support of Motion to Reverse and Remand ("Motion"). (Docs. 16, 17.) The Commissioner filed a Response in opposition on June 29, 2017 (Doc. 25), and Plaintiff filed a Reply on August 2, 2017. (Doc. 26.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Doc. 23.)

## I. Background and Procedural Record

Claimant Manuel Edward Martinez ("Mr. Martinez") alleges that he became disabled on March 1, 2008, at the age of forty-five because of back injury, right knee surgery, shoulder pain, depression, anxiety, post-traumatic stress disorder, and left elbow dislocated. (Tr. 59-60, 247, 250.[3]) Mr. Martinez completed the seventh grade in 1977, and worked for twenty-seven years on oil field derricks. (Tr. 251, 269.) Mr. Martinez reported he stopped working on April 21, 2007, due to his medical conditions. (Tr. 251.)

On September 12, 2012, Mr. Martinez filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. (Tr. 224-27.) He also filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 210-19, 228-32.) Mr. Martinez's applications were initially denied on December 13, 2012. (Tr. 57, 58, 128-32.) They were denied again at reconsideration on July 25, 2013. (Tr. 123, 124.) On September 3, 2013, Mr. Martinez requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 144-45.) The ALJ conducted a hearing on July 17, 2014. (Tr. 33-56.) Mr. Martinez appeared in person at the hearing with attorney representative Wayne Walterscheid of The Jeff Diamond Law Firm. (*Id*., 208.) The ALJ took testimony from Mr. Martinez (Tr. 36-47), and an impartial vocational expert ("VE"), Casey Suggs (Tr. 47-52). On October 27, 2014, ALJ Benita A. Lobo issued an unfavorable decision. (Tr. 9-27.) On August 16, 2016, the Appeals Council issued its decision denying Mr. Martinez's request for review and upholding the ALJ's final decision. (Tr. 1-5.) On October 13, 2016, Mr. Martinez timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 13) that was lodged with the Court on March 15, 2017.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B. <u>Standard of Review</u>**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d

1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ made his decision that Mr. Martinez was not disabled at step five of the sequential evaluation. (Tr. 25-26.) Specifically, the ALJ determined that Mr. Martinez met the insured status requirements of the Social Security Act through December 31, 2012, and that Mr. Martinez had not engaged in substantial gainful activity since October 30, 2009 [sic]. (Tr. 15.) He found that Mr. Martinez had severe impairments of degenerative disk disease, borderline intellectual functioning, attention deficit hyperactivity disorder (ADHD), major depression disorder, anxiety disorder, post-traumatic stress disorder (PTSD), cannabis dependence, and alcohol dependence in remission. (*Id.*) The ALJ also found that Mr. Martinez had nonsevere impairments of left elbow dislocation, status post right knee surgery, pectoralis muscle strain, and a history of skin conditions. (*Id.*) The ALJ, however, determined that Mr. Martinez's impairments did not meet or equal in severity one the listings described in

Appendix 1 of the regulations. (Tr. 16-18.) As a result, the ALJ proceeded to step four and found that Mr. Martinez had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(a) except that

> claimant can occasionally climb, ladders, ropes, and scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant would have to avoid concentrated exposure to temperature extremes. The claimant can perform work that is simple and routine in nature.

(Tr. 18-24.) The ALJ further concluded at step four that Mr. Martinez was unable to perform any past relevant work. (Tr. 25.) The ALJ determined at step five that based on Mr. Martinez's age, education, work experience, RFC, and the testimony of the VE, there were jobs that exist in significant numbers in the national economy that Mr. Martinez could perform. (Tr. 25-26.) Based on the VE's testimony, the ALJ identified three jobs that Mr. Martinez could perform: dishwasher (DOT 318.687-010 - Kitchen Helper), cashier (DOT 211.467-018 – Pari-Mutuel Ticket Cashier), and hand packer (DOT 920.687-146 - Repack-Room Worker). (Tr. 26.)

In support of his Motion, Mr. Martinez argues that the ALJ improperly relied on the VE's testimony at step five because the jobs the VE identified exceeded the ALJ's RFC and the ALJ failed to resolve the apparent conflicts. (Doc. 17 at 6-11.) Specifically, Mr. Martinez argues that (1) the kitchen helper job requires a person to frequently stoop and crouch and requires frequent exposure to extreme heat; (2) the cashier job requires a reasoning level of three which is incompatible with the ALJ's mental RFC limiting him to work that is simple and routine in nature; and (3) the ALJ's reliance on the hand packer job is not supported by substantial evidence because the ALJ's hypothetical question to the VE did not include occasional stooping, kneeling and crouching. (Doc. 17 at 7-10; Doc. 26 at 2.) The Commissioner concedes that the dishwasher (kitchen helper) job is inconsistent with the ALJ's RFC because it requires frequent stooping and crouching and exposure to extreme temperatures. (Doc. 25 at 6.) The

6

Commissioner, however, contends the ALJ's decision is supported by substantial evidence because Mr. Martinez is capable of doing the other two identified jobs, both of which exist in significant numbers in the national economy. (*Id.* at 7-12.) The Commissioner further contends that even if the Court were to determine that the cashier job was inconsistent with the ALJ's RFC, Mr. Martinez is capable of doing the hand packer job which exists in significant numbers in the national economy. (*Id.* at 11.)

For the reasons discussed below, the Court finds that although the ALJ failed to resolve the conflict between the VE's testimony and the DOT for the jobs of dishwasher and cashier, the ALJ nonetheless carried her burden at step five and demonstrated that significant jobs exist in the national economy that Mr. Martinez can perform. Therefore, the ALJ's error is harmless.

**A.** **The ALJ Failed to Resolve the Conflict Between the VE's Testimony and the DOT for the Jobs of Dishwasher and Cashier**

The ALJ questioned the VE at the administrative hearing as follows:

Q: Do you understand that if you give us an opinion which conflicts with the information contained in the Dictionary of Occupational Titles, you need to advise me of such conflict and the basis for your opinion?

A. Yes, Your Honor.

. . .

Q. For purpose of my next series of questions, please assume a hypothetical person of the same age, education, vocational history as the claimant.

Further assume that he could do work at the medium level with occasional climbing of ladders, ropes, and scaffolds. He would have to avoid – I'm going to say, *occasional* stooping, kneeling, crouching, crawling. He would have to avoid concentrated exposure to temperature extremes.

Would he be able to return to his past relevant work?

A: No, Your Honor.

Q: Would there be other jobs?

A: Yes. Let me give you some examples.

Q: I need to also add the work would have to be of a simple, routine nature.

A: Dishwashers. Dishwashers. At the medium exertion, there are 3,534.

Wait. That is – hold on, Your Honor. I'm sorry. I'm giving you the wrong numbers. One second. I pulled out Louisiana instead of New Mexico numbers. I'm sorry about that, Your Honor. I just caught that.

Okay. 2,569 in the State of New Mexico. In the U.S., 286,385. DOT 318.687-010.

Cashiers. 6,892; in the U.S., 1,152,113. I'll give you an example DOT code for that. 211.467-018.

Q: And what exertional level would that be?

A: That is light, unskilled, SVP 2.

Hand packers. 935; in the U.S., 325,401. DOT code 920.687-146.

These are just a few examples, Your Honor.

Q: And the hand packer was at what exertional level?

A: I'm sorry. That is at light.

Q: SVP 2?

A: Yes. Would you like another example or is that sufficient?

Q: That will be enough. I'm just trying to see if I can –

All right. And I want to reduce him to the light exertion level with the same non-exertional limitations, you – I might want another sample of jobs.

A: Yes, Your Honor. Silverware wrapper. 1,285. That is light, SVP 2, unskilled. I'll give you that DOT code. DOT code 318.687-018.

Q: And how many in the U.S.?

A: 143,192.

(Tr. 47-50.) (Emphasis added.) The ALJ adopted the VE testimony regarding Mr. Martinez's ability to work as a dishwasher, cashier and hand packer, and determined that the VE's testimony was consistent with the information contained in the DOT. (Tr. 26.)

The Tenth Circuit has held that "an ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). After the Tenth Circuit's holding in *Haddock*, the Social Security Administration promulgated Social Security Ruling 00-4p and further clarified the ALJ's affirmative responsibility to ask about conflicts. SSR 00-4p instructs that

> [w]hen vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704, at *4.

### 1. Dishwasher Job

The ALJ failed to resolve the apparent conflict between the VE's testimony regarding the dishwasher job and the DOT. Here, the ALJ asked the VE at the hearing to tell her about any conflicts with the information contained in the Dictionary of Occupational Titles and her opinion testimony. (Tr. 47-48.) As Mr. Martinez argues, however, and the Commissioner concedes, the dishwasher job exceeds the ALJ's RFC because it requires frequent stooping and crouching and

9

requires frequent exposure to extreme heat.[5] (Doc. 17 at 7-8; Doc. 25 at 6.) As such, the VE's testimony was not consistent with the DOT and the ALJ failed to explain in the determination how she resolved the conflict. This is error.

### 2. **Cashier Job**

The ALJ also failed to resolve the apparent conflict between the VE's testimony about the cashier job and the DOT. Mr. Martinez argues that the cashier job requires a reasoning level of three[6] that is incompatible with the ALJ's mental RFC limiting him to work that is simple and routine in nature. (Doc. 18 at 20-22.) Mr. Martinez relies on *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), in which the Tenth Circuit found that a limitation to "simple routine work tasks" is more consistent with jobs requiring level two reasoning. (*Id.* at 20.) In so doing, the Tenth Circuit agreed with the claimant that there was an apparent conflict between a claimant's inability to perform more than simple and repetitive tasks and the level three reasoning required by the jobs identified. *Hackett*, 395 F.3d at 1176. The Commissioner argues that *Hackett* does not apply here because the Tenth Circuit did not consider whether the apparent conflict at issue could be explained by the fact that GED describes a job performer's educational background rather than the job's mental or skill requirements. (Doc. 21 at 22.)

The SVP level measures the skill level necessary to perform a particular job; however, a claimant's skill level is not the only factor an ALJ considers in determining whether there are jobs available in significant numbers in the national economy that a claimant can do. 20 C.F.R. § 416.960(c)(1) (Commissioner considers RFC and vocational factors of age, education, and work experience to decide whether claimant can adjust to work). Thus, even acknowledging that

---

[5] *See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993) (describing the physical demands and environmental conditions required for Kitchen Helper), *available at* https://www.nosscr.org/sco/sco-ocr.pdf, p. 132.

[6] *See* DOT 211.467-018.

the GED ratings generally correspond to a person's level of formal and informal education that makes them suitable for a job, *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished), a claimant's education is one vocational factor that bears on the ALJ's ultimate determination of whether a claimant can adjust to other work at step five.  Moreover, the Court is not persuaded that merely identifying jobs that are unskilled neutralizes or supplants the reasoning level conflict as the Commissioner argues.  *See McHerrin v. Astrue*, 2010 WL 3516433, at *6, 156 Soc. Sec. Rep. Serv. 598 (E.D. Pa., Aug. 31, 2010) (explaining that a number of courts have found the DOT's reasoning levels are much more indicative of whether a claimant is capable of performing more than simple, repetitive tasks) (internal citations omitted)); *see also Chapo v. Astrue*, 682 F.3d 1285, 1290, at n. 3 (10th Cir. 2012) ("[w]hile the jobs cited by the VE happen to be unskilled, that just accounted for issues of skill transfer, not impairment of mental functions – which 'are not skills, but, rather, general prerequisites for most work at any skill level'" (quoting *Wayland v. Chater*, 76 F.3d 394 (10th Cir. 1996) (unpublished))); *see also Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (holding that a limitation to unskilled work did not account for several effects of mental impairment); *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (explaining that many unskilled jobs require more than the mental capacity to follow simple instructions); *Cooper v. Barnhart*, 2004 WL 2381515, *4 (N.D. Ola. Oct. 15, 2004) (finding that a limitation to simple tasks appears more squarely addressed by a job's reasoning level, than to its SVP level, which focuses on vocational preparedness necessary to perform the job); SSR 85-15, 1985 WL 56867, at *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the demands of the job.  A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.").  For these reasons, the

Court declines to adopt the Commissioner's position that the GED reasoning levels can be disregarded when addressing the mental demands of jobs listed in the DOT and that identifying unskilled jobs eliminates any conflicts and accommodates a claimant's limitation to do simple work. The ALJ failed to resolve the conflict between the VE's testimony and the job description for cashier in the DOT. This is error.

### B. The ALJ's Hypothetical Question to the VE Related With Precision Mr. Martinez's Physical and Mental Impairments

In his Motion, Mr. Martinez argues that the DOT code for the hand packer job the VE provided did not exist. (Doc. 17 at 10-11.) However, in his Reply, he acknowledged his error and newly argued that the ALJ's hypothetical question to the VE failed to include that Mr. Martinez could occasionally stoop, kneel and crouch.[7] (Doc. 26 at 2.) As such, Mr. Martinez contends that "the job of hand packer found by the VE and the ALJ cannot stand because it is not supported by substantial evidence if based on conflicting facts in the ALJ's hypothetical question." (*Id.*) Mr. Martinez's argument, however, necessarily fails because the record demonstrates that the ALJ did, in fact, include *occasional* stooping, kneeling, crouching and crawling in her hypothetical to the VE. (Tr. 48.) As such, there is no basis for Mr. Martinez's argument. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.").

---

[7] Because the Court finds that Mr. Martinez's argument has no merit, there is no need for the Commissioner to provide a surreply.

### C. Significant Jobs Exist in the National Economy That Mr. Martinez Can Perform and Any Error at Step Five Is Harmless

Here, two of the three jobs the VE identified exceeded the ALJ's RFC and the ALJ failed to resolve the apparent conflict between the VE's testimony and the DOT. The question, therefore, is whether the one remaining job of hand packer exists is significant numbers such that the ALJ's error at step five is harmless. The Court finds the ALJ has carried her burden at step five and that any error is harmless.

The Tenth Circuit has considered in a number of cases what constitutes a significant number of jobs. In *Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004), the court remanded when it determined that the ALJ had erroneously relied on two jobs that were in direct conflict with his RFC findings to find that significant jobs existed, and that "he never had occasion to decide if the one hundred surveillance jobs alone constituted a significant number under the statute." 357 F.3d at 1144. Similarly, in *Chavez v. Barnhart*, 126 F. App'x 434 (10th Cir. 2005), the court remanded because two of the jobs described by the VE conflicted with the Dictionary of Occupational Titles, and the ALJ did not have an opportunity to evaluate whether the 199 parking lot attendant jobs in the region, standing alone, existed in significant numbers. *Id.* at 436.

In contrast, in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), the issue was whether 650 to 900 jobs existing in the region constituted a significant number and noted several factors courts may consider in evaluating the "significant number" issue.[8] 966 F.2d at 1329-32. The court ultimately determined that substantial evidence supported the ALJ's decision. *Id.* at 1332. In *Stokes v. Astrue*, 274 F. App'x 675 (10th Cir. 2008), the court held that no reasonable

---

[8] The factors included (1) the level of claimant's disability; (2) the reliability of the vocational expert's testimony; (3) the distance claimant is capable of traveling to engage in the assigned work; (4) the isolated nature of the jobs; and, (5) the types and availability of such work. *Trimiar*, 966 F.2d at 1330.

factfinder could determine that suitable jobs did not exist in significant numbers where there were 11,000 regionally available jobs and 152,000 nationally available jobs based on two of the four jobs the ALJ considered. *Id.* at 684. In *Rogers v. Astrue*, 312 F. App'x 138 (10th Cir. 2009), the court implied that 11,000 nationally available jobs was a significant number.[9] *Id.* at 142. In *Raymond v. Astrue*, 356 F. App'x 173 (10th Cir. 2009), the ALJ identified three jobs, two of which Mr. Raymond argued exceeded his RFC. 356 F. App'x at 177. As to the one remaining job, Mr. Raymond argued that significant numbers of prospective jobs "must exist in the *regional* economy" before an ALJ can avoid a disability finding. *Id.* (emphasis in original). The Court did not reach the argument of whether the two jobs exceeded Mr. Raymond's RFC, but held that even if Mr. Raymond were unable to do those two jobs, it was undisputed he was capable of doing one of the jobs; *i.e.,* rental clerk, that the VE identified. *Id.* The Court further held that the rental clerk job existed in significant numbers in the national economy[10] and rejected the claimant's *regional* argument, holding that the controlling statutes, federal regulations, and case law all indicate that the proper focus is generally on jobs in the national, not regional, economy.[11] *Id.*

---

[9] In *Rogers*, three of the four jobs the ALJ identified exceeded the claimant's RFC. 312 F. Appx. at 141-42. The Court held, however, that the ALJ resolved any conflict between the VE's testimony and the DOT that claimant could perform the fourth job; *i.e.,* hand packager job, and that 11,000 hand packager jobs existed in the national economy. *Id.* The Court, therefore, held that the ALJ could rely on that testimony as substantial evidence to support a determination of nondisability. *Id.*

[10] 1.34 million rental clerk jobs existed in the national economy and 385 in New Mexico. *Raymond*, 356 F. App'x at 177.

[11] The Court stated that in 42 U.S.C. § 423(d)(2)(A), for example, Congress prescribed that "[a]n individual shall be determined to be under a disability only if . . . [he cannot] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area . . . '[w]ork which exists in the national economy' means work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country." *Raymond*, 356 F. App'x at 177 (emphasis added); *see also* 20 C.F.R. § 416.966(c) ("We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy."); *Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005) ("The Commissioner met her five-step burden of proving that there are sufficient jobs in the national economy for a hypothetical person with Jensen's impairments."); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (noting that the claimant must show his impairments prevent him from

Here, the ALJ carried her burden at step five and determined that jobs existed in significant numbers in the national economy that Mr. Martinez could perform. As such, the ALJ's failure to resolve the conflict between the VE's testimony and the DOT regarding the dishwasher and cashier jobs is harmless error. *See Allen*, 357 F.3d at 1145 (finding harmless error when the Court can confidently say that based on the material the ALJ considered that no reasonable administrative factfinder, following the correct analysis, could have resolved the actual matter in any other way). Mr. Martinez is capable of performing the hand packer job of which 935 such jobs existed in New Mexico and 325,401 existed nationally. (Tr. 49.) These numbers are well above the statewide and nationally available jobs the Tenth Circuit has previously found constituted a significant number. *Raymond*, 356 F. App'x at 177-78; *Rogers*, 312 F. App'x at 142; *Stokes*, 274 F. App'x at 684; *Trimiar*, 966 F.2d at 1326. The VE's testimony pertaining to the hand packer job constitutes substantial evidence supporting the ALJ's determination of nondisability, and no reasonable factfinder could have determined under the law that suitable jobs did not exist in significant numbers here. *Allen*, 357 F.3d at 1145.

For the foregoing reasons, the Court finds the ALJ's step five findings are supported by substantial evidence and there is no reversible error.

### IV. Conclusion

Mr. Martinez's Motion to Reverse and Remand and Memorandum Brief in Support (Docs. 16 and 17) is **DENIED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**

---

performing his past work, and then the burden shifts to the Commissioner to show that the claimant can perform work in the national economy)); *Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004) (noting that jobs need only exist within "the regional *or* national economy") (emphasis added)).